Argued and submitted November 5, 1998; resubmitted en banc July 7, 1999, reversed and remanded March 1, 2000

Helen BEERS,
*Appellant,*

*v.*

JESON ENTERPRISES,
dba Craft Warehouse,
Jerry D. Williams, Sonja A. Williams,
and Jeson Enterprises, Inc.,
dba Craft Enterprises,
*Respondents.*

(97C-892419, 97C-892420;
CA A102004 (Control), A102005)
(Cases Consolidated)

998 P2d 716

Lauren M. Underwood argued the cause for appellant. With him on the brief was Underwood & Norwood.

Steven L. Minetto argued the cause for respondents. With him on the brief were Wendy J. Paris and Kubik & Paris.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, and Kistler, Judges and Warden, Senior Judge.

LINDER, J.

Reversed and remanded for further proceedings.

Edmonds, J., concurring.

Wollheim, J. concurring in part; dissenting in part.

Warden, S. J., dissenting.

## LINDER, J.

Plaintiff appeals a circuit court judgment affirming an arbitrator's determination that she is not entitled to attorney fees under ORS 20.080. We review for errors of law. *Koster Remodeling & Construction, Inc. v. Jataka*, 155 Or App 142, 145, 963 P2d 726 (1998) (entitlement to attorney fees is a legal question). We conclude that plaintiff was entitled to attorney fees on one of the two claims on which she sought fees. We therefore reverse and remand for a determination of reasonable fees to be awarded to plaintiff.

This case arises out of an incident in which plaintiff, while patronizing defendants' store, was detained by defendants' employees and then arrested by police for suspected shoplifting.[1] Plaintiff later was prosecuted for theft and was acquitted. After the acquittal, plaintiff's attorney wrote defendants a letter demanding $4,000 to settle plaintiff's claim for damages allegedly caused by defendants' actions. Plaintiff prepared a single letter, identical in its substance, and sent it first to the store owner and then, about two weeks later, to the store's manager. The letter stated:

"Dear [Store Manager][Store Owner],

"This office represents Ms. Helen Beers in conjunction with an incident that occurred at your store located at 1355 NW 185th Avenue, Hillsboro, Oregon on February 23, 1995.

"On that date Mrs. Beers was detained, and subsequently falsely arrested and imprisoned, at the instance of your employees or agents. Despite a reasonable explanation following the original detention Mrs. Beers was questioned, intimidated, humiliated and imprisoned and her liberty restrained for no just cause. As a result she suffered humiliation, embarrassment, was required to obtain counsel to defend herself and was required to appear in court and endure a trial. As a result of all of the above demand is hereby made against Craft Warehouse for compensation in the sum of $4,000. If payment is not received forthwith Mrs. Beers will file *a lawsuit* against your company seeking such

---

[1] Defendants include Jeson Enterprises, dba Craft Warehouse, and its officers and shareholders. For convenience, we refer to those parties as "defendants."

damages, plus her attorney's fees and costs incurred in prosecuting such action.

"Please contact me immediately in response to this demand. I am enclosing an extra copy of this letter to be provided to your insurance representative, if coverage for this type of incident is available."

(Emphasis added.) The letter then concluded with plaintiff's attorney's signature.

Defendants declined to settle. Plaintiff then filed two separate actions, one alleging false imprisonment and the other alleging malicious prosecution, each seeking damages of $4,000. Although the two actions began as separate proceedings, eventually they were consolidated and were submitted to mandatory arbitration. *See* ORS 36.405. The arbitrator awarded plaintiff $4,000 on each claim. Plaintiff sought attorney fees under ORS 20.080.

In a written order denying the fee request, the arbitrator first indicated that he agreed with defendants' view of plaintiff's demand letter. Defendants had asserted that the letter, although sent to both the store manager and the store owner, was only a "single, pre-suit demand for payment of damages in the amount of $4,000" and it therefore did "not satisfy the requirements of ORS 20.080 for the two lawsuits subsequently filed by plaintiff."[2] The arbitrator further observed that, if the letters were construed as plaintiff argued they should be—*i.e.*, each letter serving as a separate demand on each of plaintiff's two causes of action—then the total amount of the settlement demand was $8,000. The arbitrator determined that, under either view, plaintiff was not entitled to attorney fees.

---

[2] More specifically, defendants argued:

"In this case plaintiff made a single, pre-suit demand for payment of damages in the amount of $4,000. That demand was contained in a letter sent by plaintiff's counsel to both the manager of defendants' store on September 19, 1996, and the owner of the business on September 6, 1996. Those letters, which are identical in their language, demand[ed] damages of $4,000. Subsequently, plaintiff filed *two* lawsuits—one alleging a claim for false imprisonment; the other claiming malicious prosecution—*each* seeking damages of $4,000 and attorney fees."

(Emphasis in original.) Defendants contended that because the letter was a single pre-suit demand on a single claim, the statute was not satisfied.

ORS 20.080(1) provides:

> "In any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $4,000 or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant not less that 10 days before the commencement of the action."

The statute applies in "any action for damages" to person or property where the amount pleaded is $4,000 or less. To be entitled to a prevailing party attorney fee award, the plaintiff, not less than 10 days before commencing the action, must make a written demand for payment of "such claim." Plaintiff contends that the demand letter in this case satisfied the statute because it "effectively was a demand indicating that *both causes of action* could be settled for a total of $4,000.00." (Emphasis added.) Defendants, in response, dispute plaintiff's characterization of her pretrial demand:

> "Either there was one demand for $4,000 followed by two lawsuits alleging $8,000 in damages; or there were two demands each seeking $4,000 for a total of $8,000. Either way, the pre-filing demand requirement of ORS 20.080 has not been met.
>
> "If the two letters were a single demand notifying defendants that the entire matter could be resolved for $4,000, then the demand may have complied with the statutory requirements, [but] the ultimate filing of two actions *each* seeking $4,000 runs afoul of the statute. If, however, the two letters constitute separate demands, then as the arbitrator concluded, the pre-suit demand was in reality a demand for $8,000, an amount in excess of the statutory $4,000."

(Emphasis in original.)

■    We agree that the most reasonable view of the demand letter is that it was a single, pre-suit demand seeking $4,000 for a single claim, not $4,000 for two claims. The identical text of the twice-mailed letter demands a sum of

$4,000 as a result of plaintiff's detention, arrest, and prosecution. The letter then advises that, if the $4,000 is not paid, then plaintiff will file "a lawsuit," not two or several, in which plaintiff will seek "such damages." No person receiving the letter reasonably would understand from it that plaintiff was asserting multiple claims for damages based on the incident, was threatening to file multiple lawsuits, and was willing to settle the multiple claims for a single $4,000 payment. Plaintiff's argument to the contrary evidently is based only on the fact that plaintiff sent the letter twice, first to the store owner and then to the store manager. The number of people served with the letter does not alter its essential substance, however. Whether it was mailed to one, two, or a dozen agents of defendants' business, it substantively provided notice of only one threatened action for damages and a demand to settle for $4,000.[3]

Given the demand contained in the letter, what is the consequence for plaintiff's attorney fee request? Contrary to defendants' position and the arbitrator's conclusion, the answer is not that plaintiff has no entitlement whatsoever to an attorney fee award. Had plaintiff, after sending the letters, filed only one action (either for false imprisonment or for malicious prosecution) and obtained a judgment for $4,000 in that one action, plaintiff would be entitled under the statute to an award of attorney fees. No one contends otherwise. What, then, if plaintiff had filed two separate actions, without consolidating them as in this case? Plaintiff would be entitled to attorney fees in one of the two. If plaintiff then sought fees after prevailing in both actions, defendants would be able to resist an award in one—*but not in both*—on the ground that plaintiff did not make a written pre-trial

---

[3] Judge Wollheim adopts plaintiff's characterization of the letter—that is, that the demand letter was an offer to settle *two* claims for damages for a single settlement amount. 165 Or App at 733-34 (Wollheim, J., concurring in part, dissenting in part). Given the substance of the letter, that view is particularly implausible. If, as plaintiff argues, the demand letter provided notice of *both* the false imprisonment and malicious prosecution claims, despite the threat to file only a single lawsuit, then the twice-mailed letter necessarily also constituted a demand for a settlement of $4,000 on *each* claim, and thus sought a total settlement of $8,000 and exceeded the limit in ORS 20.080(1). Because we do not accept plaintiff's view of the demand letter, it is not necessary to decide whether the damages in plaintiff's two complaints must be aggregated for purposes of testing the amount pleaded against limit in the statute.

demand as to both actions. Nothing in ORS 20.080(1) suggests a different result merely because the separate actions were consolidated for trial.[4]

Consequently, we hold that plaintiff is entitled to attorney fees on one, but not both, of her consolidated claims. Accordingly, plaintiff on remand should designate the claim on which she seeks fees pursuant to ORS 20.080, and the trial court should award a reasonable amount of fees attributable to that claim. *See generally Bennett v. Baugh*, 164 Or App 243, 990 P2d 917 (1999) (discussing standards for apportionment of attorney fees requests).

Reversed and remanded for further proceedings.

**EDMONDS, J.,** concurring.

According to the majority, the sending of two copies of a single demand letter does not entitle plaintiff to an award of attorney fees on more than one action under ORS 20.080(1).[1] I agree. The statute is aimed at notifying putative

---

[4] Judge Warden, although sharing our view of the demand letter, concludes that plaintiff is not entitled to any award of attorney fees under ORS 20.080 because she inappropriately split a single cause of action into two causes of action. 165 Or App at 737 (Warden, J., dissenting). The rule against splitting a claim arises in connection with the judicially crafted claim preclusion doctrine. It requires a plaintiff to bring all claims arising from the same factual transaction or circumstance in a single action to avoid having a judgment in a first action be binding in any subsequent action. *See generally Peterson v. Temple*, 323 Or 322, 327, 918 P2d 413 (1996). Here, there has never been a dispute over the separately actionable nature of plaintiff's claims. The gravamen of false imprisonment is the imposition of restraint on a person's freedom of movement without legal process; the gravamen of malicious prosecution is the wrongful initiation of unwarranted legal proceedings against a person. *See generally Hiber v. Creditors Collection Service,* 154 Or App 408, 413, 418-19, 961 P2d 898, *rev den* 327 Or 621 (1998). The two actions are distinct torts, involving different elements, different injuries, and potentially different damages. Depending on the facts involved, the two may be alternative theories of liability for a single tortious act (*i.e.,* where the existence of legal authority for an arrest is disputed), or cumulative theories based on sequential acts by a defendant (*i.e.,* first detaining someone without lawful process or authority and later playing an actionable role in initiating legal proceedings against the person earlier detained). At least on the record before us, and given the lack of any dispute over the point, we have no basis to conclude that that plaintiff improperly split a single cause of action in this case.

[1] ORS 20.080(1) provides, in pertinent part:

"In any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $4,000 or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for

defendants so they can settle when the amount sought is $4,000 or less. The majority then holds that plaintiff is entitled to attorney fees on one action under the statute even though plaintiff subsequently filed two separate actions for $4,000 each that were eventually consolidated for trial. It reasons that, even without consolidation, plaintiff would have been entitled to attorney fees under the statute on only one of the two actions because plaintiff did not make a written demand as to both actions. It follows, according to the majority, that the statute does not require a different result merely because the separate actions are consolidated for trial.

I agree with the majority's result in this case only because plaintiff's actions are based on discrete operative facts and plaintiff effectively sent only one notice. If plaintiff's causes of action had been based on the same set of operative facts, then I would hold that her pleading of aggregate claims of damages in excess of $4,000 would disqualify her from any entitlement to attorney fees under the statute. Under those circumstances, the pleading of multiple causes of aggregate damage claims in excess of $4,000, whether in a single complaint or multiple complaints, are subject to ORS 20.080's limitation, unless pled alternatively in an amount that complies with the statutory limit. In her complaint for false imprisonment, plaintiff alleges, in part:

> "On or about February 23, 1995, defendants, through their agents and employees, detained plaintiff on the stated grounds that they believed plaintiff had committed theft. Following reasonable explanation of the circumstances by plaintiff, defendants' agents and employees then unreasonably continued to detain and falsely imprison plaintiff, to severely 'grill' or attempt to intimidate plaintiff and tried to force her to admit to a crime that she did not commit, causing plaintiff extreme humiliation, embarrassment, severe anxiety and mental anguish, and further required her to subsequently appear in court and endure a trial, at which time she was found not guilty. All of the above caused plaintiff noneconomic damages in the sum of $4,000."

the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant not less than 10 days before the commencement of the action[.]"

In her other complaint for "malicious prosecution," plaintiff alleges, in part:

"6.

"On or about February 23, 1995, plaintiff was caused to be arrested and charged with a crime by defendants' employees and agents. Based on the conduct of defendants' agents, plaintiff was formally charged, went through trial and was acquitted of all charges.

"7.

"Despite being informed by plaintiff of the circumstances surrounding her detention, defendants' employees and agents, without taking any additional steps to verify the truth or accuracy of plaintiff's explanation, willfully and maliciously caused plaintiff to be charged and prosecuted with the crime of 'Theft III[.'] Plaintiff was required to hire an attorney to represent her, was compelled to attend a formal trial, obtain evidence and witnesses to confirm her testimony to prove her innocence, subjecting plaintiff to embarrassment, humiliation, interference with her normal and usual activities, and subjecting her to scorn and ridicule by acquaintances. All of the above was to her noneconomic damage in the sum of $4,000."

Plaintiff's false imprisonment action focuses, for the most part, on her detention for shoplifting. In contrast, her malicious prosecution claim focuses on what occurred *after her detention* at the store when defendants pursued the prosecution of her in court. In other words, defendants committed an additional tort by prosecuting her after detaining her wrongfully. Her damages resulting from the detention are discrete from the damages suffered as a result of the prosecution. That distinction is important because ORS 20.080 should not be understood to permit a plaintiff to plead multiple claims and recover amounts in excess of the statutory limit of $4,000, but yet be entitled to attorney fees under the statute when the gravamen of the claims arise out of the same operative facts.

The policy underlying ORS 20.080 "is to encourage settlement of small claims, to prevent insurance companies

and tortfeasors from refusing to pay just claims, and to discourage plaintiffs from inflating their claims." *Rodriguez v. The Holland, Inc.*, 328 Or 440, 446, 980 P2d 672 (1999). It is counter-intuitive to that policy to permit the award of attorney fees when the recovery of damages is based on liability arising out of the same set of operative facts and the recovery exceeds the $4,000 limit of the statute merely because the plaintiff has pled the claim in separate causes of action.

When the Supreme Court interprets a statute, that interpretation becomes part of the statute as if it were written into the statute at the time of its enactment, *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995), and we are bound by the court's interpretation. In my view, the outcome of this case is controlled by the juxtaposition of two Supreme Court cases interpreting ORS 20.080, *Atkinson Corp. v. Lumbermen's Cas. Co.*, 236 Or 405, 389 P2d 32 (1964), and *Johnson v. White*, 249 Or 461, 439 P2d 8 (1968). *Atkinson* involved multiple actions arising out of multiple incidents of paint damage to vehicles. The damages allegedly occurred during the painting of a bridge over a several month period. The cars crossing a nearby bridge were damaged by the paint spray. The defendant was the insurer of all of the damaged vehicles. The court held that each claim of damage, if under the statutory limit, could support a claim for attorney fees under ORS 20.080, whether pled as a separate actions or pled as separate counts in a single action. *Atkinson*, 236 Or at 412.

*Atkinson* was followed by *Johnson*, in which counts for personal injury and property damage arising out of the same tortious conduct were pled in the same action. The property damage claim was under the statutory limit, but the personal injury claim exceeded the limit. The plaintiff argued, based on *Atkinson*, that the claims should not be aggregated for purposes of the limit. The court rejected that argument, suggesting that, although interpreting the statute in that manner could lead to a multiplicity of actions being filed, that potential problem was for the legislature to resolve.

There is nothing in the language of ORS 20.080 that suggests that the legislature had multiple actions in mind when it promulgated the statute. The statute refers to an

"action," not "actions." Based on its plain language, the statute applies to "any action * * * where the amount pleaded is $4,000 or less." The statute also contemplates the possibility that certain multiple claims can be alleged in the "action." It provides for attorney fees "[i]n any action * * * for an injury or wrong to the person or property, or both." The "or both" language evidences a recognition by the legislature that more than one claim for injury or damage may arise out of the same incident and that for purposes of the monetary limitation of the statute, they are to be treated in a combined manner. The language of the statute says nothing about pleading requirements. It focuses only on the total amounts pled in an "action," and, if they exceed $4,000, then the statute eliminates the opportunity for an award of attorney fees.

Accordingly, the *Atkinson* court had it right. Each paint damage incident constituted a separate set of operative facts that could have given rise to discrete actions by the owners of the vehicles. Under the statute, attorney fees were available on each discrete damage claim, and it mattered not whether the claims were brought in a single action or multiple actions. The court's result in *Johnson* was also correct. There, a single tort gave rise to the plaintiff's claims for personal injury and property damage. The language of the statute plainly contemplates the aggregation of personal injury and property damage claims arising out of the same operative facts giving rise to liability for purposes of the monetary limit.

In *Steele v. A & B Automotive & Towing Services, Inc.*, 135 Or App 632, 899 P2d 1206 (1995), we extended the Supreme Court's holding in *Johnson* to an action in which the plaintiff sued the defendant in a single action with separate counts to recover the value of personal property and for damages under the Unfair Debt Collection Practices Act because of the defendant's subsequent efforts to collect towing and storage costs. Although the plaintiff's claims arose from discrete sets of operative facts, we aggregated the total amounts alleged in the separate counts for purposes of the monetary limitation of ORS 20.080. In *Steele*, we went astray by extending the rationale of *Johnson* to two sets of operative facts giving rise to separate claims. Although we acknowledged in *Steele* that *Johnson* did not address the propriety of

aggregating claims from different sets of operative facts, we reasoned that, because the *Johnson* court recognized that the wording of the statute could cause a multiplicity of actions, the legislature must have intended that the statutory limit could be avoided by pleading multiple actions. However, the language from *Johnson*, on which we relied in *Steele*, was in response to an argument made by the plaintiff based on the holding in *Atkinson*. The plaintiff in *Johnson* argued that the holding in *Atkinson* meant that each count in an action that was under the statutory limit could be the subject of an award of attorney fees if the plaintiff prevailed and that no aggregation of the total amounts plead was ever required under the statute. The *Johnson* court said that the plaintiff's interpretation of *Atkinson*, a case involving multiple sets of operative facts, was too broad. Thus, the *Johnson* court's rejection of the plaintiff's interpretation of *Atkinson*, must be understood in light of the fact that *Johnson* concerned a single set of operative facts. Accordingly, we were wrong to have applied the holding in *Johnson* in *Steele*, which, like *Atkinson*, involved separate sets of operative facts.

This case is also like the facts in *Atkinson*. Plaintiff pled different operative facts in each action. The fact that her causes of action were consolidated for trial makes no difference to the analysis. Because plaintiff was making discrete claims against defendants, she was required to satisfy the statutory requirements for each cause of action as a predicate to the recovery of attorney fees under ORS 20.080. Her failure to do so defeats one of her claims for attorney fees.

**WOLLHEIM, J.,** concurring in part and dissenting in part.

I concur in that part of the majority opinion that holds that plaintiff is entitled to attorney fees under ORS 20.080. However, I dissent from the majority's holding that plaintiff is entitled to attorney fees on only one of the two actions she filed. Instead, I would hold that plaintiff is entitled to attorney fees on both actions.

The majority interprets the "pre-suit demand [as] seeking $4,000 for a single claim, not $4,000 for two claims." 165 Or App at 726. I disagree. The pre-suit demand clearly identifies two causes of action, one for false imprisonment

and one for malicious prosecution. The demand also very clearly demands only a $4,000 settlement "as a result of *all* the above." (Emphasis added.) Defendants had notice that they could settle two causes of action for a total of $4,000, causes of action that could, legally, be brought in two separate lawsuits.

I concede that the pre-suit demand stated that plaintiff would file *a* lawsuit. However, plaintiff's threat to file "a lawsuit" does not diminish notice to defendants of their opportunity to settle two causes of action for $4,000. First, even considering plaintiff's threat of "a lawsuit," the letter identifies that a lawsuit will be filed for "such damages," not for "all of the above." Thus, contrary to the majority's conclusion, there is no necessary connection between the threat to file "a lawsuit" and the settlement demand of $4,000 for two causes of action. It is plausible to interpret that sentence as a threat to file "a lawsuit" for damages resulting out of either, both, or each of the claims identified above, and it does nothing to diminish notice to defendants that they could settle "all of the above" for a total of $4,000.

Second, there is no express language in ORS 20.080 requiring a separate letter for each action filed or requiring identification of the number of lawsuits in which a plaintiff intends to pursue causes of action. The statute requires only a "written demand" for "such claim." "Such claim" refers to "any action" requesting $4,000 or less in damages. *Landers v. E. Texas Motor Frt. Lines*, 266 Or 473, 476, 513 P2d 1151 (1973). I read this requirement as the court in *Landers* read the damages requirement in the demand letter: that the letter must only provide sufficient notice "to give the defendant an opportunity to settle the case." *Id.* at 475.

Support for this reading of ORS 20.080 comes from both the text of the statute and its purpose. The statute requires only that a plaintiff make a written demand concerning her claims for *any* action. That is distinguished from a requirement that a plaintiff make a demand concerning her claims in *each* action. The former requires that a written demand explain the claims that are subsequently pursued for $4,000 or less. The latter requires that a single written demand explain the claims that are subsequently pursued for

a *total* of $4,000 or less. Plaintiff should not be penalized where she made a good faith reasonable offer to settle *all* claims for $4,000. Here, plaintiff made such an offer to settle, thereby furthering the statutory goal to encourage settlement. Plaintiff should not lose the benefit of ORS 20.080 because her claims were identified in a single demand. There is no requirement that plaintiff must barrage defendants with multiple pre-suit demands. And nothing in ORS 20.080 or the pre-suit demand can be interpreted as foreclosing plaintiff from her legally available choice to pursue two distinct lawsuits because she offered one low settlement.[1]

Last, defendants argue that failure to aggregate the two claims for relief would be contrary to the legislative intent because it would encourage a multiplicity of lawsuits and enable plaintiffs to make exorbitant demands and receive attorney fees. I disagree. The Supreme Court interpreted ORS 20.080 in *Johnson v. White*, 249 Or 461, 464, 439 P2d 8 (1968):

> "If the total demand, regardless of the number of *causes* of action, is [the statutory maximum] or less, attorney fees are allowable on each *cause* of action if plaintiff recovers and other requirements are met. If the total demand is over [the statutory maximum] attorney fees may not be allowed under any *cause* of action." (Emphasis added.)

In *Johnson*, the Supreme Court concluded that the purpose of ORS 20.080 is two-fold: The first purpose is to "prevent insurance companies and others having liability for torts from refusing to settle and pay just claims therefor," *id.* at 462-63, and the second purpose is "a warning to plaintiffs not to inflate small claims beyond just amounts, in order that the tort-feasor may in good faith make settlement of such claims without resorting to the courts," *id.* at 464. The court went on to note "[t]he fact that the wording of the statute may cause a multiplicity of actions to be filed in some * * * cases * * * may be a reason for further amendment of the statute. But, that is of legislative, not judicial, concern." *Id.*

---

[1] The offer to settle two claims before trial for $4,000, but to seek $4,000 for each claim if the offer is not accepted, should not be surprising to a retailer. Basically, plaintiff was willing to settle both claims, if there was no trial, for the wholesale price of $4,000. However, if plaintiff was forced to try both claims, then plaintiff would seek the retail price of $4,000 for each claim.

Armstrong, J., joins in this concurring and dissenting opinion.

**WARDEN, S. J.,** dissenting.

Because I conclude (as did the arbitrator) that plaintiff improperly split her causes of action into two lawsuits in order to recover attorney fees, I dissent. In arriving at this conclusion, I rely on *Restatement (Second) of Judgments* § 24(1) (1982); *Drews v. EBI Companies,* 310 Or 134, 795 P2d 531 (1990); and *Whitaker v. Bank of Newport,* 313 Or 450, 836 P2d 695 (1992); *see Peterson v. Temple,* 323 Or 322, 918 P2d 413 (1996) (decided before plaintiff filed complaints in this case). "[A] plaintiff ordinarily is required to bring *all claims arising from the same factual transaction or circumstances in a single action." Peterson,* 323 Or at 327 (emphasis added). Those authorities make it clear that the operative facts can be "either a single transaction or a connected series of transactions," *Whitaker,* 313 Or at 455 (citations omitted), "out of which the action or proceedings arose." *Drews,* 310 Or at 141.

The majority and concurring judges would allow plaintiff to recover attorney fees under ORS 20.080 on the basis of their shared conclusion that her two lawsuits did not arise out of the same operative facts; but they did, and even plaintiff appears to have recognized that they did. In her "Exception to Arbitrator's Denial of Attorney Fees," she stated the facts underlying both her lawsuits as follows:

"On February 23, 1995, plaintiff Helen Beers was detained by the agents and employees of defendant Craft Warehouse based on the stated grounds they believed plaintiff had committed theft. Despite a reasonable explanation by plaintiff, she was detained and was eventually forced to appear and endure a criminal trial where she was found not guilty. On September 6, 1996, plaintiff by letter to Jeson Enterprises, Inc., dba Craft Warehouse, requested compensation of $4000.00 for plaintiff being falsely arrested and imprisoned. * * * On September 19, 1996, the identical letter was sent to the store manager where the incident took place. * * * These letters constituted a written demand of $4000.00 pursuant to ORS 20.080."

The single fact that caused defendant to detain plaintiff and to participate in the state's prosecution of her for theft was the setting off of defendant's security alarm system by an item in plaintiff's purse. Plaintiff's claim for damages for malicious prosecution was factually based and directly connected with her claim for damages for false imprisonment, both of which resulted from the security alarm incident. They were, for purposes of claim preclusion, *i.e.*, claim splitting, a connected series of transactions. Because plaintiff sought and recovered more in aggregate in the two lawsuits than the $4,000 limit for awarding attorney fees under ORS 20.080, she may not recover attorney fees too.

As the majority states, the demand letter "was a single, pre-suit demand seeking $4,000 for a single claim." 165 Or App at 726. As stated in her demand letter, the claim was for being "detained, and subsequently falsely arrested and imprisoned, * * * questioned, intimidated, humiliated and imprisoned" from which "she suffered humiliation, embar-[r]assment, [and] was required to obtain counsel to defend herself and was required to appear in court and endure a trial. *As a result of all of the above* demand is hereby made * * * for compensation in the sum of $4000." (Emphasis added.) When she filed two lawsuits demanding more than $4,000, based on this single demand, she put herself outside the purview of ORS 20.080(1).

If plaintiff's claims had been filed separately in a single lawsuit, *i.e.*, as separate claims or counts, then attorney fees would not be recoverable, even if she had demanded attorney fees in only one of them. *Johnson v. White*, 249 Or 461, 439 P2d 8 (1968). However, the majority would reward her for separating her claims into two lawsuits and demanding attorney fees in both, based on a single demand, by allowing her to recover attorney fees in both claims and letting her choose in which she can justify the greater amount.

Neither the arbitrator nor the trial judge fell for plaintiff's ploy of dividing her claim into separate lawsuits. Unfortunately, most members of this court have.

Somewhat respectfully, I dissent.