Argued and submitted October 15, 2003, reversed August 11, 2004

GUARDIAN MANAGEMENT, LLC,
on behalf of St. Vincent DePaul Villa,
*Respondent,*

*v.*

James ZAMIELLO,
*Appellant.*

02F 007-058; A118878

95 P3d 1139

Frank Wall argued the cause and filed the briefs for appellant.

Mark McGranaghan argued the cause for respondent. On the brief were Warren F. Wadsworth and Bittner & Hahs, P.C.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant, a residential tenant, appeals a judgment of eviction entered against him in this forcible entry and detainer (FED) action. ORS 90.155. Defendant contends that plaintiff, his landlord, failed to comply with ORS 90.155 and with the rental agreement because plaintiff's manner of notifying defendant of termination—mailing and attaching the termination notice to plaintiff's door, known as "nail and mail," was invalid. Plaintiff argues that defendant either waived his right to, or is estopped from, contesting plaintiff's manner of termination because defendant had not challenged seven other notices similarly posted and mailed. We review for errors of law and reverse.

The relevant facts are not in dispute. The parties entered into a written rental agreement in 1996. Defendant's rent is subsidized by the Department of Housing and Urban Development (HUD). The rental agreement states that, in order to terminate the agreement, plaintiff must comply with HUD regulations, state and local law, and the terms of the agreement. In 1997, the legislature amended ORS 90.155 to require landlords to include in rental agreements reciprocal language concerning the right to use mail and attachment to serve termination notices. The original 1996 rental agreement did not include that reciprocal language. The agreement provided that, in order to change the agreement, (1) the landlord must have prior approval of HUD, (2) the landlord must provide the tenant with 60 days' notice before the change becomes effective, and (3) the landlord must offer the tenant a new contract or amendment to the rental agreement for authorization.

On November 18, 1997, in an attempt to comply with the 1997 statutory amendments, plaintiff mailed defendant an addendum to the rental agreement, including the reciprocal provision required by the amendments. The notice consisted of the changed language and a cover letter, neither of which sought defendant's signature. The cover letter of the addendum stated that the changes to the rental agreement would become effective on January 5, 1998. The time between the notice to defendant and the effective date of the

changes was 48 days. Plaintiff did not seek HUD approval of the amendments.

On January 10, 2002, roughly four and one-half years later, plaintiff notified defendant that his tenancy would be terminated in 30 days due to noise and conduct disturbances. The notice was delivered by mail and attachment pursuant to ORS 90.155(1)(c).[1] Between defendant's mailing of the November 1997 addendum and the January 2002 notice, plaintiff had given multiple other similar notices to defendant by means of mail and attachment, to which defendant had not objected. Defendant objected to the January 2002 termination notice.

Defendant moved to dismiss the complaint for plaintiff's failure to comply with ORS 90.155, and the trial court denied defendant's motion. Judgment was entered against defendant. Defendant moved for a new trial, and the trial court granted that motion and reset the matter for additional testimony and argument regarding whether the rental agreement had been modified to comply with ORS 90.155. The court again entered judgment against defendant, holding that plaintiff had complied with ORS 90.155, had modified the rental agreement to provide for reciprocal mail and attachment, and had properly delivered the termination notice. Defendant appeals and assigns error to the trial court's denial of his motion to dismiss for lack of compliance with ORS 90.155.

■        Defendant argues that plaintiff violated the agreement when it attempted to serve him with a termination notice by mail and attachment. To evict a tenant, a landlord must give written termination notice pursuant to ORS

---

[1] ORS 90.155 provides, in part:

"(1) Except as provided in ORS 90.300, 90,425 and 90.675, where this chapter requires written notice, service or delivery of that written notice shall be executed by one or more of the following methods:

"(a) Personal delivery to the landlord or tenant;

"(b) First class mail to the landlord or tenant; or

"(c) If a written rental agreement so provides, both first class mail and attachment to a designated location. In order for a written rental agreement to provide for mail and attachment service of written notices from the landlord to the tenant, the agreement must also provide for such service of written notices from the tenant to the landlord."

90.155, which, at the time the agreement was signed, authorized a landlord to deliver termination notices by two methods: personal delivery or first class mail. ORS 90.155 (1995), *amended by* Or Laws 1997, ch 577, § 6; Or Laws 2001, ch 596 § 29(a). As previously noted, ORS 90.155 was amended in 1997 to require reciprocal mail and attachment, so that, if a landlord could serve notice through mail and attachment, a tenant could serve the landlord in the same manner. Because the original agreement was signed in 1996 and did not provide for reciprocal mail and attachment, plaintiff had to amend the agreement to comply with the 1997 amendments to ORS 90.155. The agreement included a provision governing the manner in which plaintiff could change the agreement. Under that provision, plaintiff was required to give defendant 60 days' notice of any change, was required to have defendant approve changes by signature, and was required to obtain HUD's approval for the change. Plaintiff did not do any of those things. Although plaintiff attempted to amend the agreement to comply with ORS 90.155, it failed to do so because it notified defendant only 48 days before changing the rental agreement, did not seek defendant's signature, and failed to get HUD's approval for the change. Defendant would have us end our analysis there, arguing that, because plaintiff failed properly to amend the agreement, mail and attachment is not authorized by the agreement, and an attempt to use mail and attachment to deliver notice of termination is a violation of ORS 90.155 and of the original unamended agreement. Though not ultimately persuasive, plaintiff presents a number of arguments that merit discussion.

■ As it argued at trial, plaintiff argues on appeal that defendant had either waived the argument or was estopped from arguing that defendant did not comply with ORS 90.155 and the agreement because he had failed to challenge earlier notices delivered in the same manner. Defendant counters that the agreement fails to authorize mail and attachment as a method for notification and defendant is not prevented by waiver or estoppel from challenging plaintiff's defective notice.

■■ Plaintiff's waiver argument rests largely on the fact that defendant was silent for four and one-half years. That

silence does not affect defendant's ability to raise the defense of defective notice in this case. From what the record shows, defendant took the other notices as requests to comply with the agreement, and no other attempted notice resulted in litigation.

> "Waiver is the intentional relinquishment of a known right. Waiver must be plainly and unequivocally manifested, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power. (To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose[.])"

*Wright Schuchart Harbor v. Johnson*, 133 Or App 680, 685-86, 893 P2d 560 (1995) (internal citations and quotation marks omitted; bracketed material in original).

Plaintiff argues that, by failing to challenge the earlier notices, defendant waived his defective notice defense. Defendant argues that he did not know about the HUD compliance requirement or the requirement that he be presented with the amendment for his approval, so his failure to act cannot be considered a waiver. Plaintiff counters that every party to a contract who has signed the contract is deemed to know its contents. Thus, argues plaintiff, defendant presumptively acted with full knowledge of the contract provisions.

■■ A waiver can occur expressly or by implication. A waiver of a legal right requires a clear, unequivocal, and decisive act or inaction of the party demonstrating the party's intention to relinquish the right. Here, defendant's failure to challenge the earlier notices for four and one-half years can reasonably be attributed to other motivations as well as to a purpose to relinquish his legal right to object to an improper notice of eviction. Consequently, defendant's inaction does not constitute the unequivocal manifestation required by the rule. *See Hohman v. Bartel*, 128 Or App 384, 387, 876 P2d 347 (1994).

■ Plaintiff argues in the alternative, that defendant is estopped from raising a defective notice defense because plaintiff reasonably relied on defendant's failure to raise that

defense as to the earlier notices. As the Supreme Court stated in *Bennett v. City of Salem et al.*, 192 Or 531, 541, 235 P2d 772 (1951):

> "To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it."

The first element requires a false representation. In this instance, any representation made by defendant was by silence. Silence can be an act for the purpose of equitable estoppel only if a party has a duty to speak. *Knapp v. Daily*, 96 Or App 327, 332, 772 P2d 1363 (1989). However, "[t]he duty to speak does not arise unless the party against whom the estoppel is urged knew or should have known that a failure to speak would probably mislead the other party to act to his or her detriment." *Id.* Plaintiff contends that defendant had the duty to speak within the 30-day eviction period in order to give defendant an opportunity to remedy the ineffective notice.

There is no evidence that the reason why defendant remained silent over the four and one-half year period preceding the notice at issue here or why he remained silent during the 30-day notice period was to induce plaintiff to refrain from serving defendant by another valid method. Thus, defendant's silence was not an act for purposes of equitable estoppel.

There is no evidence that defendant unequivocally waived his right to have the agreement properly amended or to be served in a proper manner. Likewise, there is no evidence that defendant intended to induce plaintiff to refrain from properly serving defendant. Accordingly, defendant was not estopped from arguing that plaintiff improperly served notice of eviction under the rental agreement.

Reversed.